**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dymond Canada,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>Sender Incorporated,<br><br>　　　　　　Defendant. | No. CV-21-02218-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Sender, Inc.'s Motion for Summary Judgment. (Doc. 69). The Motion has been fully briefed. (Docs. 70, 83, 84, 85). The Court now rules as follows.[1]

I. **BACKGROUND**

On December 28, 2021, Plaintiff Dymond Canada ("Plaintiff") initiated this action against Defendant Sender, Inc. ("Defendant"). (Doc. 1). Defendant operates a warehouse in Phoenix, Arizona, where it customizes promotional items for companies to provide to their customers. (Doc. 69 at 1–2). Plaintiff worked at Defendant's warehouse on December 22, 2020, when the events giving rise to this action occurred. (Doc. 1).

STS Staffing and Temporary Services ("STS"), a staffing agency, assigned Plaintiff and her friend Donae Douglas ("Douglas") to work at Defendant's warehouse on

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

December 22, 2020. (Doc. 83 at 2). Throughout the workday, Plaintiff had several encounters with Brandon Washington ("Washington") and Dwayne Brown ("Brown"), two of Defendant's employees.[2] (Doc. 83 at 4–6). According to Plaintiff, when walking to her workstation, she noticed Washington staring at her, and later, when she was walking back from a break, she heard Washington say, "Damn, look at her butt." (Doc. 84 at 6 ¶¶ 20, 22). Plaintiff informed her trainer that the comments and staring made her uncomfortable. (*Id.* at 7 ¶ 25). When returning to her workstation after lunch, Plaintiff noticed Washington following her and telling Brown, "Look. I told you. Look." (*Id.* at 7 ¶ 29). Plaintiff told Washington that he was making her uncomfortable and asked him to please stop. (*Id.*). Washington allegedly "went into a rage" and replied, "Bitch, I can look at whatever I want," and after Plaintiff told him that she was not a piece of property, Washington further replied, "I can own you." (*Id.* at 7 ¶¶ 30–31). Brown was holding Washington back, causing Plaintiff and Douglas to believe that Washington "would have attacked and tried to hurt them had he not been restrained." (*Id.* at 8 ¶ 34).

Plaintiff and Douglas went outside, where they were approached by Defendant's Human Resources Generalist, Catherine Osorio ("Osorio"). (Doc. 70 ¶ 20; Doc. 84 at 2 ¶ 20). Plaintiff and Douglas reported these incidents to Osorio. (Doc. 70 ¶¶ 20–27; Doc. 84 at 8–10 ¶¶ 38–50). The parties dispute what was said during the conversation with Osorio.

According to Defendant, Osorio determined that Plaintiff was claiming that Washington acted inappropriately, that Brown condoned the conduct, and that Plaintiff would not return to work for Defendant unless Osorio fired Washington and Brown. (Doc. 70 ¶¶ 23–24). Osorio also claims that Plaintiff said she "no longer wanted to be at the job" and did not "care about the job." (*Id.* ¶ 26). Osorio then sent Plaintiff and Douglas home for the rest of the day with pay. (*Id.* ¶ 27).

---

[2] Both Brown and Washington were subpoenaed for depositions, but due to their repeated nonappearance and noncooperation have been stricken as witnesses. (Docs. 63, 75, 78, 81).

Plaintiff's account of the conversation with Osorio is somewhat different. According to Plaintiff, while she was explaining to Osorio what happened, Washington and Brown came outside, causing Plaintiff to suffer a panic attack. (Doc. 84 at 8 ¶ 46). Osorio asked if Plaintiff and Douglas wanted to return to work. (*Id.* at 8–9 ¶ 49). Plaintiff asked if they could be placed in a different area than Washington and Brown, and Osorio answered she could not keep them separated. (*Id.*). Osorio then offered Plaintiff and Douglas the option of returning to work or going home with pay and asked them to return in the morning. (*Id.* at 9 ¶ 50).

Defendant asserts that after sending Plaintiff and Douglas home, Osorio interviewed Washington and Brown. (Doc. 70 ¶ 29). The parties agree that later that day, Osorio contacted STS to end Plaintiff's and Douglas's assignments at Defendant's warehouse. (*Id.* ¶ 29; Doc. 84 at 3 ¶ 29). That evening, an STS employee sent Plaintiff a text message informing her that Defendant "did not want her or Douglas to return." (Doc. 84 at 10 ¶ 53). Plaintiff did not see the message until morning, when she and Douglas were already on their way to Defendant's warehouse to meet with Osorio. (Doc. 84 at 10 ¶ 54).

Plaintiff's Complaint alleges that Defendant terminated Plaintiff's employment because Plaintiff reported sexually harassing conduct. (Doc. 1 ¶ 39). The Complaint alleges one cause of action, Title VII retaliation against Defendant. (*Id.* at 7).

## II.   **LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial responsibility of

presenting the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material. *Anderson*, 477 U.S. at 250. In other words, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citation omitted).

When considering a motion for summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. In its analysis, the court must view the factual record and draw all reasonable inferences in the nonmovant's favor. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III.   DISCUSSION

Defendant moves for summary judgment on Plaintiff's sole claim for Title VII retaliation and, alternatively, on her entitlement to certain damages. The Court addresses the issues in turn.

### A.   Title VII Retaliation

"To make out a prima facie case of retaliation, an employee must show that (1) [s]he engaged in a protected activity; (2) [her] employer subjected [her] to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action." *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). "[T]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the

evidence." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1124 (9th Cir. 2000) (citation omitted); *see Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 730–31 (9th Cir. 1986).

Here, for the purposes of this Motion, the parties agree that the first element is met, and Defendant is silent on the third element, so the Court will treat it as met. (Doc. 69 at 6). Thus, the Court addresses only the second element, whether Defendant subjected Plaintiff to an adverse employment action.

For retaliation claims, an employment action is adverse if it is "reasonably likely to deter the charging party or others from engaging in protected activity." *Ray*, 217 F.3d at 1243 (citation omitted). Here, Plaintiff claims that Defendant terminated her employment in retaliation for reporting sexually harassing and offensive conduct. (Doc. 1 ¶ 41). Indeed, this would be an adverse employment action. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996). However, Defendant argues Plaintiff resigned before Defendant could have engaged in the alleged adverse employment action. (Doc. 69 at 6). If so, Plaintiff would fail to meet this element. *See Tanooryan v. Pima County*, No. CV 18-00293-TUC-JR, 2020 WL 10224734, at *7 (D. Ariz. Nov. 6, 2020) ("A voluntary resignation does not constitute an adverse employment action."); *see also Jones v. McCormick & Schmick's Seafood Rests., Inc.*, No. 1:12-CV-04503 RMB, 2014 WL 1669808, at *4 (D.N.J. Apr. 28, 2014). Thus, the issue of whether Plaintiff resigned prior to her alleged termination is material to Plaintiff's claim.

There is some evidence to support Defendant's argument that Plaintiff resigned. During the interaction with Osorio, Plaintiff allegedly said she "no longer wanted the job," did not "care about the job," and "would never come back [to work for Defendant] again" if Osorio "did not fire both" Brown and Washington. (Doc. 70 ¶¶ 24, 26). But there is also some evidence to support Plaintiff's argument that her statements were not a resignation. Plaintiff argues that in context, she was explaining to Osorio that she wanted the conditions changed in order to feel safe enough to return to work. (Doc. 83 at 12–13; Doc. 84 at 10–12 ¶¶ 55–56, 66). During her deposition, Plaintiff said she did not tell Osorio to fire Brown and Washington, but rather told Osorio that she "did not want to be

around them." (Doc. 84 at 3 ¶¶ 24, 26; Doc. 84-2 at 40). A juror could reasonably infer from Plaintiff's statements that she was not resigning but merely requesting a change in working conditions. Furthermore, Plaintiff and Douglas testified that Osorio asked them to go back to work that day. (Doc. 84-2 at 40, 72). However, after learning the two male co-workers would still be present, Plaintiff and Douglas were sent home with pay and instructed by Osorio to return in the morning to meet with her. (Doc. 84-2 at 40–41, 72–73). A juror could reasonably infer from the offer to return to work that Osorio did not view Plaintiff's statements as a resignation and, at the time the conversation ended, expected Plaintiff to return to work the next day. In sum, there is conflicting evidence in the record regarding the conversation between Plaintiff and Osorio and whether Plaintiff resigned prior to the alleged termination. Thus, the Court finds that there is a genuine dispute of material fact that must be decided by a jury.

### B.     Damages

Defendant argues that even if it is liable for retaliation, Plaintiff is not entitled to back pay, front pay, or benefits because Plaintiff resigned on December 22, 2020, or in the alternative, on December 23, 2020. (Doc. 69 at 7). For claims under Title VII, liability for back pay generally extends from the date of the adverse employment action until the date of final judgment. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1136 (9th Cir. 1986); *see Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419 (1975) (citation omitted) (holding that back pay makes "workers whole for losses suffered on account of an unfair labor practice"). "[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001); *see also Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1155 (9th Cir. 1999). Here, the alleged adverse employment action occurred on December 22, 2020. (Doc. 69 at 3). Therefore, if Defendant is found liable based on the alleged adverse employment action and a finding that Plaintiff did not resign prior to that action, liability for Plaintiff's damages would begin on December 22, 2020. And even if Plaintiff "resigned" after the adverse

employment action, it would not affect Plaintiff's *entitlement* to damages—the issue on which Defendant seeks summary judgment. Thus, the Court cannot conclude as a matter of law that Plaintiff is not entitled to back pay, front pay, or benefits.

## IV.   CONCLUSION

In sum, the Court finds that there are genuine disputes of material facts as to Plaintiff's retaliation claim and entitlement to damages. Thus, Defendant is not entitled to summary judgment. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 69) is **denied**.

Dated this 24th day of July, 2023.

Honorable Steven P. Logan
United States District Judge